REVISED JUNE 18, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 05-20803

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

May 14, 2008

Charles R. Fulbruge III
Clerk

STROMAN REALTY, INC.,

Plaintiff-Appellee,

v.

JIM ANTT, JR., ET AL.,

Defendants,

SIMONE MARSTILLER,
Secretary of the Department of Business and Professional Regulation
for the State of Florida;
JEFF DAVI,
Commissioner of Department of Real Estate for the State of California,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Stroman Realty, Inc. ("Stroman"), a Texas-based real-estate broker en-

gaged in the resale of timeshares, filed a declaratory judgment action in Texas to enjoin California and Florida officials from imposing their states' respective licensing and regulatory requirements on real estate transactions in their states or involving their citizens, alleging that application of these requirements violates the dormant Commerce Clause. The district court enjoined Florida and California from enforcing their requirements on Stroman. Because the district court lacked personal jurisdiction over the defendants, we reverse and render a judgment of dismissal.

## I.

Although Stroman's only office is in Conroe, Texas, it has sold properties in 47 states and 29 countries and has served purchasers in every state and in 87 countries. It establishes a large database of available timeshares; it does not use cold calls or pressure sales but focuses instead on advertising to customers through direct mail, the Internet, and newspapers. Its website displays its available properties, and its computer system matches potential sellers with buyers. All of its agents and brokers are licensed in Texas.

Stroman generates revenue through advance listing fees and commissions. It charges sellers a one-time $500 non-refundable advance fee to be listed on its website, as well as a commission of 10% or $750, whichever is greater, upon sale. In 1997, the year during which most discovery in this case occurred, Stroman made the vast majority of its revenue through advance fees, and most homes it listed were never sold. The parties argue strenuously about the prevalence of advance fees in the resale industry and about the policy arguments for and against advance fees.

## A.

Florida requires all real-estate brokers to be licensed and declares that all

contracts with its residents procured by agents who are unlicensed in Florida are void. Although Florida originally claimed that a real-estate agent would need to be licensed to sell a Florida timeshare regardless of where the owner or seller resides, it now claims that brokers only need to be licensed when they interact with Florida citizens. Florida licenses are available to out-of-state residents, although the residents must complete educational requirements and pay license fees. Renewal of a Florida license requires continuing education and additional fees.

Florida prohibits brokers from collecting advance listing fees for Florida timeshares (although they may collect such fees for traditional real estate). That ban explicitly applies to advance fees charged to non-resident owners of Florida timeshares. Out-of-state brokers must be approved by the Secretary of State and must consent to service of process in Florida.

## B.

California also requires that all brokers who serve its residents have California licenses, participate in continuing education, and pay licensing fees. Though California allows advance fees, it requires brokers to keep such fees in a trust account in an in-state bank until they are spent for the customer's benefit. Brokers must account for those funds, and advertising materials soliciting fees must be approved by the state.

California also has a unique regulation: Licensed brokers must maintain an office in California that "shall serve as [their] office for the transaction of business." CAL. BUS. & PROF. CODE § 10162 (2007). The parties dispute whether all work must be done from that office, as the district court found. California claims that licenses are still available to non-residents, who need not maintain an in-state office until after they have acquired a license. California also urges that although the in-state office must be the broker's principal place of business,

it need not be the exclusive place of business.

## II.

In 1990, California, by mail, ordered Stroman to cease advertising and brokerage activities in California. In 1997, the Commissioner of the California Real Estate Department signed an order citing Stroman for violating California statutes and regulations in 1997. The order was mailed to the Texas Real Estate Commission, which investigated and determined that Stroman had complied with California's orders.

Invoking 42 U.S.C. § 1983, Stroman sued Florida's Secretary of the Department of Business and Professional Regulation, seeking an injunction to prevent Florida officials from enforcing their brokerage laws, after the Secretary had commenced enforcement proceedings in 1998. The California Commissioner was later joined as a defendant.

The defendants unsuccessfully moved to dismiss for want of personal jurisdiction. On cross-motions for summary judgment, the district court granted Stroman an injunction, finding that the real-estate licensing requirements of Florida and California violate the Dormant Commerce Clause when applied to Stroman's timeshare resale business in Texas.

## III.

We adopt Texas's jurisdictional statutes to reach out-of-state defendants, because § 1983 lacks a provision for services of process. See FED. R. CIV. P. 4(e), (k). The Texas long-arm statute extends to the limits of the Constitution; our inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause. See Religious Tech. Ctr. v. Liebreich, 339 F.3d 369, 373 (5th Cir. 2003).

The Fourteenth Amendment allows a court to assert personal jurisdiction

over defendants who have meaningful "contacts, ties, or relations" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Such contacts can give rise to general or specific jurisdiction. Courts exercise "general jurisdiction" over any action where the defendant has "continuous and systematic general business contacts" with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 n.9, 416 (1984). If the contacts are less pervasive, courts may exercise "specific jurisdiction" in "a suit arising out of or related to the defendant's contact with the forum." Id. at 414 n.8.

The district court found general and specific jurisdiction. We review those findings de novo. Freudensprung v. Offshore Tech. Servs., 379 F.3d 327, 342 (5th Cir. 2004).[1]

## A.

The district court held that it had general jurisdiction because the State of California Franchise Tax Board and the Florida Department of Revenue had offices in Houston, Texas, according to the phone directory. See SOUTHWESTERN BELL, GREATER HOUSTON BUSINESS WHITE PAGES 129, 265 (1998). Neither of the two departments that were sued had an office in Texas, however, nor did the district court make findings regarding the officers' particular contacts that could give rise to general jurisdiction.

Instead, the court reasoned that because the officers are parts of larger administrative apparatuses, segments of which had a permanent presence in Texas, this could give rise to general jurisdiction. The court went further by assert-

---

[1] Stroman maintains that appellants have waived their objections to personal jurisdiction. This is incorrect. In its opinion denying appellants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the district court explicitly held that appellants were subject to the court's jurisdiction. Because appellants appropriately moved for dismissal for want of personal jurisdiction, they have not waived the issue for purposes of appeal. See FED. R. CIV. P. 12(h).

ing that because "[the court] is part of a government that is clearly and directly related to the two states and their governments," it had jurisdiction over the defendants. In other words, courts in the Southern District of Texas have jurisdiction over California and Florida officials because they are all members of the federal Union.

The district court did not cite any authority for these propositions; there is none. To draw no distinction between officers of a state (or the department of which the officer is a member) and the state itself would allow, as a matter of constitutional due process, an Oklahoma resident to sue a California state trooper in Texas for civil rights violations occurring in California. In other words, the practical consequence of this approach would be that any state action by a Florida or California official could be challenged in Texas. This is not the general jurisdiction contemplated in Helicopteros, which arises out of continuous and systematic contacts with a forum. See Helicopteros, 466 U.S. at 415-16. Rather, it is an attempt at universal jurisdiction, by a federal district court, for which there are no limiting principles.[2]

## B.

The district court lacks specific jurisdiction in light of Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 483-84 (5th Cir. 2008), petition for cert. filed (May 5, 2008) (No. 07-1387), in which we held that a district court in Texas did not have personal jurisdiction over Stroman's suit against the Commissioner of the Department of Real Estate for Arizona, because the latter did not have sufficient minimum contacts with the forum. The contacts between the commissioner and

---

[2] We take no position on whether, for example, the Florida Department of Revenue is subject to general jurisdiction Texas. Nor do we decide the precise scope of whatever general jurisdiction may arise out of one state's having an office in another. We conclude only that finding general jurisdiction under the facts presented here would violate the Due Process Clause of the Fourteenth Amendment.

Texas were a cease-and-desist order and correspondence with Stroman's attorneys. Id. at 484.

Stroman urges that the contacts in this case are more extensive than those in our earlier case.[3] In addition to cease-and-desist letters such as those found in the earlier case, Stroman alleges that California attacked Stroman in letters to the Texas Real Estate Commission, and Florida used the Texas Attorney General's office to get information. Neither of those additional contacts is sufficient to create personal jurisdiction.

Purposeful availment of the privileges of conducting business in a forum is indicative that a defendant has contacts with a state. See Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002). Stroman urges that California purposefully availed itself of the privileges of conducting business in Texas when it sent its cease-and-desist order to the Texas Real Estate Commission, resulting in the Commissions's investigation of Stroman's compliance with the order.

If Stroman's characterization of the communication were accurate, it would therefore go toward satisfying the "minimum contacts" test. It is incorrect, however, to characterize that contact as purposeful availment. The letter served only to notify the Commission that an order to cease and desist had issued against Stroman. It did not request any action on the part of the Commission. In other words, California did not avail itself of any of Texas's protections.

Ordinarily, minimum contacts are a proxy for determining whether a defendant could reasonably anticipate being haled into federal court. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Because the letter does not evidence any such anticipation, nor puts a party on notice that it might be sued, it is insufficient to establish personal jurisdiction.

---

[3] Despite its claim in that regard, Stroman said this case was virtually identical to the earlier one, and it attempted to consolidate them.

Stroman also alleges that Florida used the Texas Attorney General's Office to obtain information as a basis for its Florida lawsuit. Florida made a Texas Public Information Act request for public documents, but that is not a sufficient contact. Only those contacts out of which the claim arises count in specific jurisdiction analysis. See Nuovo Pignone, 310 F.3d at 378. There is no way to construe that contact as the basis for the suit; Stroman's cause of action does not arise out of that request. More importantly, however, Florida's secretary could not have reasonably expected to be haled into court for requesting public information.

Because the district court did not have personal jurisdiction over this matter, it is inappropriate for us to reach the merits of the case. The judgment is VACATED, and judgment of dismissal for lack of personal jurisdiction is RENDERED.