# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20093

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2018

Lyle W. Cayce
Clerk

CAPTAIN MANJIT SANGHA,

> Plaintiff - Appellant

v.

NAVIG8 SHIPMANAGEMENT PRIVATE LIMITED,

> Defendant - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Captain Manjit Sangha ("Cpt. Sangha") challenges both the district court's grant of Defendant-Appellee Navig8 Ship Management Private Limited's ("Navig8") motion to dismiss for lack of personal jurisdiction and for *forum non conveniens*, and the denial of his motion to remand. We conclude that the district court did not err in dismissing Cpt. Sangha's claims and therefore AFFIRM.

## I.    BACKGROUND

Beginning in June 2009, Cpt. Sangha worked as a mooring master for Navig8 aboard the M/V Miss Claudia ("Miss Claudia") in the Gulf of Mexico. In October 2015, while Cpt. Sangha was working as the master in command of

No. 17-20093

the Miss Claudia, his vessel collided with another ship, causing damage to both vessels. After this accident, Navig8 declined to renew Cpt. Sangha's employment contract. He subsequently obtained new employment as a mooring master under a contract with Marine Consulting, LLC ("Marine Consulting").

Several months later, Navig8 learned that Cpt. Sangha, who was then serving on board the M/V Songa Pearl ("Songa Pearl") in his employment with Marine Consulting, would soon be maneuvering in the Gulf of Mexico in a ship-to-ship transfer of bunker fuel alongside the Miss Claudia, his former vessel. That same day, Manish Gupta ("Gupta"), Navig8's Safety Manager, sent an email to Cpt. Sangha's supervisor, Captain Johannes Schild ("Schild"), informing him that Navig8 would prefer not to have Cpt. Sangha in charge of the maneuver with the Miss Claudia because "[t]he collision incident [was] still under legal/insurance proceedings." After additional correspondence in which another Navig8 representative, Prashant Mirchandani ("Mirchandani"), explained that Navig8 only wished to use a different mooring master in all maneuvers involving the Miss Claudia, Cpt. Sangha alleges that Marine Consulting terminated his contract and removed him from the Songa Pearl in the Port of Houston.

Cpt. Sangha filed a petition for damages against Navig8 in the 129th District Court in Harris County, Texas, alleging various tort claims, including tortious interference with his contract as a mooring master with Marine Consulting.[1] Navig8 removed the case from Texas state court to federal district court under 28 U.S.C. § 1441(a), arguing that Cpt. Sangha pleaded a claim

---

[1] Cpt. Sangha also brought claims alleging defamation, tortious interference with his "current and prospective relations and economic advantage" in the maritime industry, intentional infliction of emotional distress, and intentional fraudulent misrepresentation, allegedly resulting in Cpt. Sangha's loss of employment and other damages.

2

within the original admiralty or maritime jurisdiction of the federal courts under 28 U.S.C. § 1333. Cpt. Sangha sought to remand the case to state court on grounds that the saving-to-suitors clause of the admiralty jurisdiction statute prohibited removal of the case. Navig8 opposed the motion to remand, arguing that Cpt. Sangha's lawsuit, an admiralty action, fell clearly within the province of the removal statute as amended in 2011 and, consequently, Navig8 had a right to remove Cpt. Sangha's claims to federal court. Navig8 thereafter filed a motion to dismiss under, *inter alia*, Federal Rule of Civil Procedure 12(b)(2), arguing (1) that Cpt. Sangha failed to provide details supporting a showing of personal jurisdiction over Navig8, and (2) that the doctrine of *forum non conveniens* warranted dismissal. After limited discovery, the district court dismissed Cpt. Sangha's claims, holding that the court lacked personal jurisdiction over Navig8 and, alternatively, that Cpt. Sangha's claims should be dismissed under the doctrine of *forum non conveniens*. This appeal followed.

## II.    DISCUSSION

*A. Subject-Matter Jurisdiction and Order of Determination*

On appeal, Cpt. Sangha primarily contends that the district court abused its discretion by foregoing the challenge to subject-matter jurisdiction presented in his motion to remand in favor of the questions of personal jurisdiction and *forum non conveniens* raised in Navig8's motion to dismiss. We disagree.

A district court's decision to address non-merits matters before establishing its own subject-matter jurisdiction is reviewed for abuse of discretion. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). Although district courts generally determine their own subject-matter jurisdiction before proceeding to a determination on the merits, such a strict sequencing of consideration is not required before a court orders dismissal on non-merits grounds. *Id.* at 584. To that end, the Supreme Court has

consistently held that "there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. v. Malay. Int'l Shipping*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas*, 526 U.S. at 584). Indeed, a federal court has considerable leeway "to choose among threshold grounds for denying audience to a case on the merits." *Id.* (quoting *Ruhrgas*, 526 U.S. at 585). The Supreme Court has expressly approved of addressing personal jurisdiction before subject-matter jurisdiction, *see Ruhrgas*, 526 U.S. at 584–85, and of addressing *forum non conveniens* before other jurisdictional issues, *see Sinochem*, 549 U.S. at 429.

However, neither *Ruhrgas* nor *Sinochem* change the general expectation that federal courts address subject-matter jurisdiction at the outset in the "mine run of cases" and reach other issues first only where the jurisdictional issue is "difficult to determine" and the other grounds are relatively "less burdensome." *Sinochem*, 549 U.S. at 436; *accord Ruhrgas*, 526 U.S. at 587–88 (stating that "expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of [the issue of subject-matter jurisdiction] first"). That is, although federal courts normally must resolve questions of subject-matter jurisdiction before reaching other threshold issues, this rule is subject to the qualification that courts facing multiple grounds for dismissal should consider "the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000).

We hold that the district court acted within its discretion in deciding the issues of personal jurisdiction and *forum non conveniens* before that of subject-matter jurisdiction. The district court did not state that Cpt. Sangha's motion to remand presented particularly thorny questions. However, despite Cpt. Sangha's claims to the contrary, the question of subject-matter jurisdiction

presented in this case—whether the saving-to-suitors clause of the federal maritime statute prohibits removal of general maritime claims absent an independent basis for federal jurisdiction in light of Congress's December 2011 amendment to the federal removal statute—is not clear. The vast majority of district courts considering this question have maintained that such lawsuits are not removable. *See Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809–10 (M.D. La. 2015) (collecting cases). However, because there is no binding precedent from this circuit, *see Riverside Constr. Co., Inc. v. Entergy Miss., Inc.*, 626 F. App'x 443, 447 (5th Cir. 2015) (noting that "[t]he Fifth Circuit has not yet spoken directly on this issue"), there remains a consequential number of district courts that have held to the contrary. *See, e.g.*, *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013); *see also Langlois*, 139 F. Supp. 3d at 809 (collecting cases). This disagreement, lopsided as it might be, highlights the conceptual difficulty of and uncertainty surrounding the issue. Accordingly, we hold that the district court did not abuse its discretion in resolving the issue of personal jurisdiction before establishing whether subject-matter jurisdiction existed.

*B. Personal Jurisdiction*

This court reviews de novo a district court's determination that it lacks personal jurisdiction. *Pervasive Software, Inc. v Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000)).

A non-resident defendant may move to dismiss for lack of personal jurisdiction. If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in

determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Quick Techs., Inc.*, 313 F.3d at 343). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.*

There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted).

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotations omitted).

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* Establishing general jurisdiction is "difficult" and requires "extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609. "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . . [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). The defendant must make a "compelling case." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies. *Id.*; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987).

No. 17-20093

We hold that Cpt. Sangha did not make a *prima facie* showing of personal jurisdiction. More pointedly, after considering Cpt. Sangha's petition and the record evidence, it is clear that Navig8 is not subject to general jurisdiction in Texas. It is undisputed that Navig8 is not incorporated in Texas, has a foreign principal place of business, has no officers or shareholders in Texas, does not pay taxes in Texas, and does not have an agent for service of process in Texas. To dispute Navig8's jurisdictional defense, Cpt. Sangha submitted an affidavit testifying that he was aware that Navig8 "conducted business routinely out of the Port of Houston" and that Navig8 "does substantial business from and in the Port of Houston in bunkering fuel from the Port of Houston and other ports on Texas to offshore Texas." Cpt. Sangha argues that these statements are not controverted and are therefore sufficient to establish a *prima facie* case of general jurisdiction. Even assuming the veracity of the jurisdictional allegations contained in Cpt. Sangha's petition and affidavit, he has not demonstrated that Navig8's contacts with the state of Texas are "continuous and systematic" enough to support general jurisdiction. *Goodyear*, 564 U.S. at 919. Cpt. Sangha's allegations that Navig8 "conducted business routinely" and does "substantial business" in Texas, without more, merely amount to "vague and overgeneralized assertions" of contacts "that give no indication as to the extent, duration or frequency" of Navig8's contacts. *See Johnston*, 523 F.3d at 609; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (emphasizing that conclusory allegations of contacts with a forum, even if uncontroverted, cannot establish general jurisdiction). Coupling Cpt. Sangha's insufficient allegations with the difficulty of making a *prima facie* showing of general jurisdiction, we hold that Cpt. Sangha has failed to adequately show that Navig8 should be subject to general jurisdiction in Texas.

Nor does Cpt. Sangha allege sufficient contacts to show Navig8 is subject to specific jurisdiction in Texas. Cpt. Sangha avers that the intentional torts urged by him "stem from communications from Navig8 about Captain Sangha, directed toward the State of Texas because Captain Sangha was working under his contract with his employer at the Port of Houston at the time of the tortious conduct," and that "[t]he effect of Navig8's intentional torts were felt in Houston, Texas." Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014). This court has previously explained that a defendant does not have minimum contacts with a state when it does not have a physical presence in the state, it did not conduct business in the state, and the contract underlying the business transaction was not signed in the state and did not call for performance in the state. *Id.* at 272. Neither can the plaintiff's *own contacts* with the forum be used to demonstrate contacts by the defendant. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

The contacts Cpt. Sangha identifies to support specific jurisdiction— email communications from two Navig8 representatives located outside the country to Cpt. Sangha's then-supervisor in Alabama, an employment contract between Cpt. Sangha and Marine Consultants allegedly confected in Houston,[2] that the email communications were targeted at a contract formed in Texas,

[2] Record evidence demonstrates that the contract was not confected in Houston. Schild, Cpt. Sangha's supervisor, sent the contract in an email from Alabama. The executed contract indicates the parties signed the agreement in Boca Raton, Florida, Cpt. Sangha's residence. The contract does not specifically provide that Cpt. Sangha's work would be confined to the Gulf of Mexico, nor does it specifically refer to the Port of Houston.

and that the emails concerned work that was to be performed in Texas—are legally insufficient to support a finding of specific jurisdiction. Navig8's contacts with the state have to be purposeful "and not merely fortuitous," *Walden*, 134 S. Ct. at 1123 (noting that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State") (quoting *Burger King*, 471 U.S. at 475). Even though Navig8's email communications happened to affect Cpt. Sangha while he was at the Port of Houston, this single effect is not enough to confer specific jurisdiction over Navig8.

Relatedly, Cpt. Sangha's reliance on the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), is unavailing. Cpt. Sangha argues that "[t]his case tracks the *Calder* analysis because committed [sic] an act expressly aimed at work that Capt. Sangha was performing in and from Texas ports, including the Port of Houston, and the harm, including termination[,] was felt in Houston, where Capt. Sangha was picked up after termination." The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum. *Walden*, 134 S. Ct. at 1125. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id*. The proper question is not whether Cpt. Sangha experienced an injury or effect in a particular location, but whether Navig8's conduct connects it to the forum in a meaningful way. Cpt. Sangha's presence in the Gulf of Mexico/Port of Houston is largely a consequence of *his* relationship with the forum, and not of any actions Navig8 took to establish

No. 17-20093

contacts with the forum.[3] Accordingly, Cpt. Sangha has failed to establish a *prima facie* case of personal jurisdiction.

Because we affirm on personal jurisdiction grounds, we need not address the district court's *forum non conveniens* analysis.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Cpt. Sangha's claims.

---

[3] The record indicates that Navig8 was likely aware that the ship-to-ship transfer between its vessel and the Songa Pearl would take place in the Gulf of Mexico right outside of Houston. Map coordinates included in email correspondence between Navig8 representatives and Schild indicate that the cargo transfer would happen on April 9, 2016 "near position: 29 degrees 04.0'N, 094 degrees 41.0'W". The plotting of those coordinates shows that the maneuver Navig8 employees were attempting to remove Cpt. Sangha from would occur just southeast of Houston in the Gulf of Mexico. Even considering this, however, the allegation that the "effects" of Navig8's emails were felt in Houston are nothing more than fortuitous. *See Walden*, 134 S. Ct. at 1125.