# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2021

Lyle W. Cayce
Clerk

No. 20-40020

Bulkley & Associates, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Department of Industrial Relations, Division of Occupational Safety and Health of the State of California,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-735

Before Dennis, Higginson, and Willett, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

In this case, a Texas company has twice sued a California state agency, arguing that the agency cannot enforce California regulations in Texas. The issue before us is whether the agency's sending a letter to the company in Texas, regarding penalties and inspections related to violations of California law, creates minimum contacts that establish personal jurisdiction in Texas courts. The district court concluded that it does not. We affirm.

No. 20-40020

I

Plaintiff Bulkley & Associates, LLC is a Hopkins County, Texas, company that transports refrigerated goods interstate. In 2015, a Bulkley truck driver fell off a truck and was injured while delivering goods to a customer in Salinas, California. Defendant Department of Industrial Relations, Division of Occupational Safety and Health of the State of California, cited Bulkley and assessed penalties for three violations of California health and safety law: (1) failing to timely report an injury to California authorities, (2) failing to develop an injury-prevention program compliant with California law, and (3) failing to require foot protection in accordance with California law.[1] Bulkley pursued administrative appeals in California, disputing the Department's authority to require Bulkley to comply with California law.[2] Bulkley lost and has since filed two lawsuits challenging the Department's authority, *Bulkley I* and *Bulkley II*. *Bulkley II* is before us today, but the issues in *Bulkley II* are intertwined with those in *Bulkley I*, so we start there.

*Bulkley I* began in 2018, when Bulkley filed a petition for mandamus in Hopkins County court, seeking judicial review of the California administrative appeal that Bulkley lost.[3] The Department removed the petition to federal court, and promptly moved to dismiss for lack of personal

---

[1] *See* CAL. CODE REGS. tit. 8, § 342 (workplace injury reporting); *id.* § 3203 (injury prevention); *id.* § 3385 (foot protection).

According to an administrative finding, this accident occurred on March 26, 2015. The date of the accident does not affect the resolution of the issues before us here.

[2] The record on appeal contains no indication that Bulkley made any payment on the penalties.

[3] *Bulkley & Assocs., LLC v. Occupational Safety & Health Appeals Bd.* (*Bulkley I*), No. 4:18-CV-642, 2019 WL 2411544, at *1 (E.D. Tex. June 7, 2019).

jurisdiction.[4] Bulkley argued that the Texas court had personal jurisdiction because Bulkley is a Texas resident and because the California law authorizing judicial review of agency action directs litigants to the county court where they reside: "Any person affected by an order or decision of the appeals board may . . . apply to the superior court of the county in which he resides, for a writ of mandate, for the purpose of inquiring into and determining the lawfulness of the" agency's decision.[5] Bulkley also argued that the Department had minimum contacts with Texas because the citations "penalized Bulkley for its work rules and procedures, which were created and implemented in Texas."[6] The district court rejected both arguments and dismissed Bulkley's claims. In doing so, the district court relied exclusively on its lack of personal jurisdiction, though it also noted "serious doubts over whether it ha[d] subject matter jurisdiction."[7] Bulkley did not appeal.

After *Bulkley I* and before *Bulkley II*, in August 2019, the Department sent Bulkley a letter to collect the unpaid penalties of $6,180, informing Bulkley that the Department would pursue a judgment in California court if Bulkley failed to pay. On September 9, 2019, the Department sent Bulkley another letter, referencing violations of California law "observed during the inspection completed on 09/04/2015 [at] the place of employment" "maintained by" Bulkley and located in Salinas, California. This letter further instructed Bulkley to complete a form confirming that the violations had been remedied, and warned that failure to do so could result in the

---

[4] *Bulkley I*, 2019 WL 2411544, at *1.

[5] *Id.* at *2–*4; CAL. LAB. CODE § 6627.

[6] *Bulkley I*, 2019 WL 2411544, at *6.

[7] *Id.* at *1 n.1.

No. 20-40020

Department "conduct[ing] a follow-up inspection of [Bulkley's] place of employment" or "issuance of a citation and civil penalty."

Bulkley sought and obtained injunctive relief in Hopkins County court (commencing *Bulkley II*, the case now before us), pointing to the September 9, 2019 letter as proof that the Department had possibly inspected Bulkley in Texas and was threatening to do so again. Bulkley reasoned as follows: The September letter referenced the "place of employment" maintained by Bulkley; Bulkley maintained employment only at its headquarters in Texas; therefore, the letter could only be referencing inspections in Texas.

The Department again removed the action to federal court and again moved to dismiss for lack of personal jurisdiction. This time, Bulkley argued that, since *Bulkley I*, the Department had developed minimum contacts with Texas by sending the September 2019 letter—that is, by possibly inspecting Bulkley in Texas and threatening to do so again. The district court again concluded the Department lacked minimum contacts and dismissed Bulkley's complaint for lack of personal jurisdiction. This appeal followed.

II

A

The parties agree that we have appellate jurisdiction over the district court's final judgment dismissing Bulkley's claims for lack of personal jurisdiction under 28 U.S.C. § 1291.

On appeal, Bulkley contests subject-matter jurisdiction. Regardless of whether a party questions it, we must normally assure ourselves of subject-matter jurisdiction before we do anything else.[8] But when the issues

---

[8] *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018).

4

No. 20-40020

regarding subject-matter jurisdiction are more difficult to resolve than other possible jurisdictional grounds of dismissal, including personal jurisdiction, we may address the other grounds first.[9] In addition to comparing the complexity of the possible grounds for dismissal, we consider "concerns of federalism, and of judicial economy and restraint."[10]

Here, we will address personal jurisdiction before subject-matter jurisdiction because: (1) Bulkley contests subject-matter jurisdiction without analyzing it, (2) the district court expressed reservations regarding subject-matter jurisdiction in *Bulkley I* without explaining them,[11] and (3) our precedents squarely address the personal-jurisdiction question in this case.

B

We review a dismissal for lack of personal jurisdiction de novo.[12] Whenever "the alleged facts are disputed," the party asserting personal jurisdiction has the burden to prove it exists.[13] If the defendant has moved to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to

---

[9] *Id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007)).

[10] *Id.* (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000)). We no longer weigh these institutional concerns differently for cases that are removed to federal court from state court, as opposed to cases originally filed in federal court. The Supreme Court rejected our previous rule that courts must assess subject-matter jurisdiction before personal jurisdiction for cases removed from state court. *Alpine*, 205 F.3d at 213 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)).

[11] The Department removed on federal-question grounds. Given Bulkley's constitutional arguments, it appears likely that the district court doubted something other than the presence of a federal question. *See Bulkley I*, 2019 WL 2411544, at *1 & n.1.

[12] *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020), *cert. denied*, No. 20-984, 2021 WL 1163750 (U.S. Mar. 29, 2021).

[13] *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

identify facts that demonstrate a prima facie case of jurisdiction.[14] In deciding whether the plaintiff meets this burden, we take as true the nonconclusory, "uncontroverted allegations in the plaintiff's complaint" and we resolve "conflicts between the facts contained in the parties' affidavits . . . in the plaintiff's favor."[15]

Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits.[16] In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment.[17] Texas's long-arm statute specifically provides for personal jurisdiction over nonresidents who "do[] business" in Texas or "commit[] a tort" in Texas.[18] As this court has observed, however, "the Texas long-arm statute extends to the limits of federal due process."[19] Therefore, "the two-step inquiry" of assessing the

---

[14] *Grewal*, 971 F.3d at 490.

[15] *Felch*, 92 F.3d at 327 (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)); *accord Alpine*, 205 F.3d at 215; *see also Grewal*, 971 F.3d at 490 (addressing conclusory allegations (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001))).

[16] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (first quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), then quoting FED. R. CIV. P. 4(k)(1)(A)).

[17] *Grewal*, 971 F.3d at 490 (citation omitted). Personal jurisdiction can come in the form of general or specific jurisdiction, but general jurisdiction is not at issue in this case.

[18] TEX. CIV. PRAC. & REM. CODE § 17.042.

[19] *Sangha*, 882 F.3d at 101 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)); *accord, e.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

long-arm statute and due process "collapses into one federal due process analysis."[20]

The Due Process Clause permits jurisdiction over a nonresident defendant who "has 'minimum contacts' with the forum state such that imposing a judgment"[21] "does not offend traditional notions of fair play and substantial justice."[22] Our constitutional inquiry involves three questions.[23] First, to evaluate minimum contacts, we ask if the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[24] Second, we ask if the case "arises out of or results from the defendant's forum-related contacts."[25] Third, we ask if "the exercise of personal jurisdiction is fair and reasonable."[26] If we answer all three questions in the affirmative, personal jurisdiction over the out-of-state defendant satisfies due process.[27]

---

[20] *Sangha*, 882 F.3d at 101 (quoting *Johnston*, 523 F.3d at 609).

[21] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[22] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe*, 326 U.S. at 316–17).

[23] *Grewal*, 971 F.3d at 490 (citation omitted); *see also Ford*, 141 S. Ct. at 1024 (contrasting specific and general jurisdiction).

[24] *Grewal*, 971 F.3d at 490 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

[25] *Id.* (quoting *Seiferth*, 472 F.3d at 271).

[26] *Id.* (quoting *Seiferth*, 472 F.3d at 271).

[27] *Id.*

No. 20-40020

### III

The parties dispute whether the Department established minimum contacts with Texas. Alternatively, the Department contends that the Texas long-arm statute does not apply to out-of-state officials. We take each in turn.

### A

In addressing minimum contacts, we first review the possible jurisdictional contacts and the parties' arguments. Next, we review our applicable precedents. Last, we conclude that Bulkley fails to demonstrate that the Department created minimum contacts with Texas that subject it to personal jurisdiction in the state.

### 1

Accepting the facts as Bulkley tells them and drawing reasonable inferences therefrom, the universe of possible jurisdictional contacts includes: (1) the Department's sending the September 2019 letter to Bulkley in Texas; (2) the letter's instruction that Bulkley remedy violations of California law, which Bulkley could only do by changing its policies in Texas; and (3) the letter's demonstrating the possibility of past and future inspections in Texas, by referencing violations "observed during the inspection completed on 09/04/2015 [at] the place of employment" "maintained by" Bulkley, and warning that the Department would "conduct a follow-up inspection of [Bulkley's] place of employment." The Department, for its part, provides a declaration stating that its only inspection of Bulkley took place in California in 2015.

Bulkley asserts that the Department created an ongoing relationship with Bulkley (a Texas employer) by sending the September 2019 letter, which suggests that the Department had inspected Bulkley at its "place of employment" in Texas and would do so again in the future. Bulkley says that

8

that the district court improperly credited the Department's evidence that it had not and would not inspect Bulkley in Texas. In Bulkley's view, two pieces of evidence show the contrary: (1) the September 2019 letter's informing Bulkley of a prior inspection and possible future inspections to ensure compliance with California law at the "place of employment maintained by" Bulkley, and (2) the Department's stipulating to the fact that Bulkley maintains no place of employment in California. Bulkley reasons that the letter could only have been referring to inspections in Texas because the letter mentioned no California location and, at any rate, only an inspection at Bulkley's headquarters in Texas could reveal whether Bulkley had remedied the three violations of California law, by changing its reporting, injury-prevention, or foot-protection policies.

The Department claims that its only Texas-related conduct was enforcing the civil penalties Bulkley incurred in California. There is no genuine conflict in evidence, the Department says, because the "place of employment" in the September 2019 letter "obviously refers to" the accident site in California, for two reasons. First, the Department points to the letter's enclosure, which indicates the Salinas address. Second, the Department relies on California law, which defines "place of employment" more broadly than a company's place of business—the term encompasses any place work occurs.[28] Further, the Department asserts, Bulkley conspicuously fails to allege or prove that the Department has ever or will ever come to Texas for an inspection. The Department concludes that, by

---

[28] *See* CAL. LAB. CODE § 6303(a) ("'Place of employment' means any place, and the premises appurtenant thereto, where employment is carried on, except a place where the health and safety jurisdiction is vested by law in, and actively exercised by, any state or federal agency other than the division.").

No. 20-40020

relying exclusively on statements in the letter, Bulkley fails to satisfy the burden to demonstrate personal jurisdiction.

2

We have examined Texas courts' personal jurisdiction over the government officials of other states in three cases: *Stroman Realty, Inc. v. Wercinski*; *Stroman Realty, Inc. v. Antt*; and *Defense Distributed v. Grewal*.[29]

In all three, a Texas business sued an out-of-state official for sending a cease-and-desist letter.[30] In all three, we concluded that sending a cease-and-desist letter to a Texas business does not, by itself, establish minimum contacts with Texas, even if the letter focuses on the business's activities inside Texas.[31]

In *Wercinski* and *Antt*, we found that Texas courts lacked personal jurisdiction. The plaintiff in both cases was a Texas real-estate company that did business in Arizona, Florida, and California, causing regulators in those states to send the company cease-and-desist letters.[32] The plaintiff sued the out-of-state officials, claiming that they violated the U.S. Constitution by enforcing their states' real-estate laws against the company.[33] We did not

---

[29] Both parties invoke *Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008), and *Wercinski*, 513 F.3d at 484. Only the Department filed a 28(j) letter addressing *Grewal*, 971 F.3d 485, which was released after the briefing in this case. Bulkley did not respond to that letter or otherwise oppose *Grewal*'s relevance.

[30] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386; *Grewal*, 971 F.3d at 491–92.

[31] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386; *Grewal*, 971 F.3d at 491–92. *See also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542–43 (5th Cir. 2019) (a private actor does not establish minimum contacts by sending "a cease-and-desist letter threatening litigation").

[32] *Wercinski*, 513 F.3d at 480–82; *Antt*, 528 F.3d at 383–85.

[33] *Wercinski*, 513 F.3d at 481; *Antt*, 528 F.3d at 383.

No. 20-40020

reach this argument, however, because we concluded that Texas courts lacked personal jurisdiction over the out-of-state officials. That is, the officials did not create minimum contacts in Texas by pursuing violations of their states' laws as to the plaintiff's real-estate transactions involving their states' property or residents.[34] The officials had not availed themselves of Texas law because the plaintiff unilaterally chose to transact with Arizona, Florida, and California residents and property.[35]

Two specific conclusions from *Wercinksi* also matter here. First, we rejected an argument that minimum contacts could arise from the *possibility* that an out-of-state official has made, or will make, additional Texas contacts; rather, minimum contacts must be "known" and not "hypothetical."[36] Second, we explained that it does not matter if the out-of-state official's enforcement efforts revolve around conduct that takes place in Texas.[37]

Later, in *Grewal*, we concluded that Texas courts did have personal jurisdiction over the out-of-state official. We held that the New Jersey attorney general created minimum Texas contacts by sending Defense Distributed, a Texas business that published "materials related to the 3D printing of firearms," a letter "threatening legal action if Defense Distributed published its files."[38] In doing so, we explained, the attorney general sought to enforce New Jersey law and halt Defense Distributed's activity nationwide, including activity that had no connection to New Jersey

---

[34] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386.

[35] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386.

[36] *Wercinski*, 513 F.3d at 484.

[37] *Id.* at 485; *accord Grewal*, 971 F.3d at 491 (stating that *Wercinksi* "expressly forecloses" distinguishing between a cease-and-desist letter that "focuse[s] on activities occurring *outside* Texas" and one that "focuse[s] on activities occurring *inside* Texas").

[38] *Grewal*, 971 F.3d at 488–89, 497.

No. 20-40020

property or residents.[39] We explained that, unlike the state officials in *Wercinski* and *Antt*, the New Jersey attorney general created minimum Texas contacts because he failed to cabin his nationwide enforcement efforts to conduct involving New Jersey property or residents.[40]

3

Applying *Wercinski*, *Antt*, and *Grewal*, the Department did not establish minimum contacts solely by way of sending the September 2019 letter.[41] And under *Wercinski*, the possibility that the Department has inspected or will inspect Bulkley in Texas does not establish minimum contacts.[42] Notably, Bulkley never directly asserts that the Department did in fact inspect Bulkley in Texas. Construing the evidence in Bulkley's favor, at most the Department *claims* to have inspected Bulkley in Texas before it issued the September 2019 letter and threatens to do so again. But these are "hypothetical" contacts; Bulkley needs to show "known minimum contacts."[43]

Also under *Wercinski*, it does not matter if the Department's letter instructed Bulkley to remedy violations of California law, which Bulkley could only do by changing its policies in Texas. We must adhere to the principle in *Wercinski*, which we reaffirmed in *Grewal*, that a letter "focused

---

[39] *Id.* at 492. Judge Higginson, concurring separately, observed that the letter began: "You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents"; yet, the plaintiff had alleged that the attorney general threatened to enforce New Jersey law for distributions to residents of other states. *Id.* at 499 (Higginson, J., concurring).

[40] *Id.* at 492 (majority opinion); *accord id.* at 499 (Higginson, J., concurring).

[41] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386; *Grewal*, 971 F.3d at 491–92.

[42] *See Wercinski*, 513 F.3d at 484.

[43] *See id.*

on activities occurring *outside* Texas" is no different from a letter "focused on activities occurring *inside* Texas" for purposes of minimum contacts.[44]

Granted, the letter does not expressly cabin its instructions to Bulkley's California-related conduct. At first blush, this sounds like the dispositive jurisdictional fact in *Grewal*: The New Jersey attorney general established minimum contacts with Texas by commanding the plaintiff to halt business nationwide, without cabining that command to New Jersey business.[45] But the scope of the letter is limited to California-related conduct in two other ways, distinguishing this case from *Grewal*.

First, the letter references only violations of California law related to a specific 2015 accident in Salinas, California. The record reflects that the injured driver was carrying out work in California, and Bulkley does not argue otherwise. Second, the California laws that the letter instructed Bulkley to follow are themselves limited to persons and events within California.[46] Again, Bulkley's first citation was for violating a requirement to report workplace injuries "occurring in a place of employment"[47]—a term the California legislature defined to include any work carried on in California, and to exclude any work carried on where "health and safety jurisdiction is vested by law in, and actively exercised by, an[other] state or federal

---

[44] *Grewal*, 971 F.3d at 491 (citing *Wercinski*, 513 F.3d at 485–86).

[45] *Grewal*, 971 F.3d at 492.

[46] *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985) (concluding that, although Kansas law did not govern transactions without Kansas ties, Kansas was not required "to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state" (quoting *Pac. Emps. Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 502 (1939))).

[47] Cal. Code Regs. tit. 8, § 342.

agency." [48] Likewise, the second and third violations, regarding injury-prevention programs and foot protection, [49] apply only to "places of employment in California." [50]

Accordingly, the Department's conduct falls in the same category as that of the Arizona, Florida, and California officials in *Wercinski* and *Antt*, who did not create minimum contacts by enforcing their states' real-estate laws regulating transactions with their states' property or residents. [51]

B

Having concluded that the Department lacks minimum contacts establishing personal jurisdiction in Texas, we decline to reach the Department's alternative argument that the Texas long-arm statute does not apply to out-of-state officials. [52]

---

[48] CAL. LAB. CODE § 6303(a).

[49] CAL. CODE REGS. tit. 8, § 3203 (injury prevention); *id.* § 3385 (foot protection).

[50] *Id.* § 3202(a).

[51] *Wercinski*, 513 F.3d at 485–86; *Antt*, 528 F.3d at 386.

[52] We caution against relying on *Wercinksi*'s suggestion—in dicta, without the full panel, *see* 513 F.3d at 489–90 (Barksdale, J., concurring)—that the Texas long-arm statute does not apply to out-of-state officials. This interpretation contravenes Texas Supreme Court precedent and invokes federal law that does not clearly apply.

The Texas Supreme Court has explained that there are *no* limits on Texas's long-arm statute besides federal due process. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Absent a conflict with federal law, the last word on Texas law belongs to the Texas Supreme Court. *See Murdock v. City of Memphis*, 87 U.S. 590, 626 (1874). *Wercinski* identified "question[s]" and "uncertain[ties]," not a conflict. 513 F.3d at 482–83. Doubts do not justify demoting the Texas Supreme Court's interpretation of a Texas statute. *Cf. Michigan v. Long*, 463 U.S. 1032, 1044 (1983) (clarifying constitutional law that constrains state interpretation of state law). Nor are we confident that *Wercinski*'s doubts bear out. We perceive no inherent link between personal jurisdiction and sovereign immunity. A State can assert sovereign immunity regardless of

what the long-arm statute says. If the *Ex Parte Young* exception applies, sovereign immunity is unavailable—the official is an individual, not the State, so a sister-State court's exercising personal jurisdiction does not offend state sovereignty, even if the challenged conduct was enforcement of a state statute. This anomaly comes from the *Ex Parte Young* "fiction," not the sister State's personal-jurisdiction statute.