**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
May 10, 2019

Lyle W. Cayce
Clerk

No. 18-20248

JOSE CARMONA,

Plaintiff–Appellant,

versus

LEO SHIP MANAGEMENT, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Jose Carmona was injured while unloading cargo from a vessel docked outside Houston. He sued Leo Ship Management, Inc. ("LSM"), a foreign corporation that managed the ship. Noting that LSM had no control over the ship's ports of call, the district court dismissed for want of personal jurisdiction, holding that the company did not purposely avail itself of the privilege of conducting activities in Texas. We affirm in part, vacate in part, and remand.

No. 18-20248

## I.

As a stevedore, Carmona was tasked with unloading cargo from the M/V Komatsushima Star in April 2014. While he was rigging a bundle of pipes in the ship's hold, the pipes fell and injured his ankle and lower leg.

LSM is a Philippine corporation with its principal place of business in Manila. None of its employees, officers, shareholders, or directors has ever resided in Texas, and the company does not own or rent property in the state. LSM solicits no business in Texas and has never contracted with a Texas resident to render performance there.

In 2009, LSM contracted with the owners of the M/V Komatsushima Star to serve as the ship manager. In that capacity, LSM supplied and supervised the crew and arranged for necessary repairs and maintenance to ensure compliance with the laws "of the places where [the vessel] trades." The contract was freely terminable with two months' notice. Under the agreement, LSM did not have an ownership interest in the ship and could not direct where it traveled, what it carried, or for whom it worked. Rather, the charterer or sub-charterer possessed the sole authority to set the ship's course. Nonetheless, the agreement required the ship's owners and LSM "to maintain close communication with each other and [to] share relevant information regarding [the] ship's schedule" and "port information." In fact, LSM had advance notice that the ship would be docking in Texas to discharge the pipes.

Although a third party had loaded the pipes aboard the ship outside the United States, Carmona sued LSM in state court, claiming negligence under general maritime law and the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See* 33 U.S.C. §§ 905(b), 933. Specifically, he alleged that LSM breached its duty to (1) stow the pipes properly; (2) minimize hazards associated with falling pipes; (3) take precautions to protect workers;

2

No. 18-20248

(4) provide a safe work environment; (5) turn over the vessel in a safe condition for discharging cargo; (6) warn of hidden dangers; and (7) intervene. After removing to federal court, LSM moved to dismiss for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2).

The district court granted the motion, finding that LSM did not purposely avail itself of the benefits and protections of Texas. The court reasoned that because LSM had no control over the itinerary, any contact with the state was "merely fortuitous or random." This appeal followed.

II.

We review a ruling on personal jurisdiction *de novo*. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Where, as here, the district court dismissed "without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Id.* "We accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam).

There is personal jurisdiction if the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process. *Sangha*, 882 F.3d at 101. Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge. *Id.* Though "[p]ersonal jurisdiction can be general or specific," this case implicates only the latter. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In evaluating whether due process permits the exercise of specific jurisdiction, we consider

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its

3

activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* (citation omitted). If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.[1]

## A.

For there to be minimum contacts, a defendant must have "purposefully availed himself of the benefits and protections of the forum state"[2] "such that he should reasonably anticipate being haled into court there."[3] That requirement is the "constitutional touchstone" of personal jurisdiction. *Burger King*, 471 U.S. at 474. It "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475 (internal quotation marks and citations omitted). That is, the plaintiff cannot supply "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Rather, jurisdiction is proper only where the "defendant *himself*" made deliberate contact with the forum. *Id.* at 284 (quoting *Burger King*, 471 U.S. at 475).

The parties do not dispute that LSM made contacts with the forum when

---

[1] *Sangha*, 882 F.3d at 102 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)); *see also Seiferth*, 472 F.3d at 271.

[2] *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[3] *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

the vessel, containing its employees, docked outside Houston.[4]  Instead, they disagree as to (1) whether a defendant's contacts with a forum and the purposefulness of those contacts are independent inquiries and (2) if so, whether LSM's presence in Texas was purposeful.

1.

According to Carmona, knowing and voluntary entry into a forum state, coupled with commission of a tort inside that state, is sufficient to support specific jurisdiction, irrespective of whether the defendant purposely availed itself of the privilege of conducting activities there.  Carmona posits that purposeful availment is analytically useful only in "effects" cases in which a defendant's *out-of-state* conduct inflicted injury within the forum.  He suggests that in such cases, purposeful availment operates as a "conceptual tool" for determining whether the defendant's contacts with the forum "are such that he should reasonably anticipate" litigation there.  *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen,* 444 U.S. at 297).  But Carmona urges that where, as here, the tortious act both occurred and caused injury within the forum, the court need not independently consider whether the conduct was purposefully directed at the forum state or whether the defendant purposefully availed itself of the forum state's protections.

In most cases, the defendant's commission of a tort while physically present in a state will readily confer specific jurisdiction.[5]  "Generally, the commission of an intentional tort in a forum state is a purposeful act that will satisfy the purposeful availment prong . . . ."  16 JAMES WM. MOORE ET AL.,

---

[4] *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state . . . .").

[5] We are aware of no example—and LSM has cited none—in which a court lacked jurisdiction under those circumstances.

No. 18-20248

MOORE'S FEDERAL PRACTICE § 108.42[3][a], at 108-70 (3d ed. 2019). Nonetheless, while recognizing that a defendant's physical entry into a forum "is certainly a relevant contact,"[6] the Supreme Court has never held that such presence is dispositive in the "minimum contacts" analysis.[7]  Instead, the Court has stressed that "where the defendant *deliberately* has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there." *Id.* at 475–76 (emphasis added) (cleaned up).

Purposeful availment is a constitutional prerequisite for jurisdiction, regardless of where the tortious conduct occurred.  In *Elkhart Engineering Corp. v. Dornier Werke*, 343 F.2d 861 (5th Cir. 1965), the plaintiff sued a German corporation for crashing his plane during a demonstration in Alabama. Beyond the requirement that the defendant have "minimum contacts . . . with the forum," we recognized "the additional element that in every case . . . there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 866 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Because the defendant "*voluntarily* entered [the] state and invoked the protections of its laws," personal jurisdiction extended to "any tortious acts committed while there." *Id.* at 868 (emphasis added).

Similarly, in *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir. 1992), we explained that a nonresident defendant's activities, "whether direct acts *in* the forum or conduct outside the forum, must justify a

---

[6] *Walden*, 571 U.S. at 285.

[7] *See Burger King*, 471 U.S. at 476 (noting that "territorial presence" often will only "*enhance* a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there") (emphasis added).

conclusion that the defendant should reasonably anticipate being called into court there." *Id.* at 1068 (emphasis added). As the "constitutional touchstone" of personal jurisdiction, purposeful availment is an essential element even where the defendant committed a tort within the forum state. *Burger King*, 471 U.S. at 474.

In an effort to show otherwise, Carmona cites *Burnham v. Superior Court of California*, 495 U.S. 604, 611 (1990) (plurality opinion), for the proposition that a defendant's physical presence in the forum—"no matter how fleeting"—is sufficient to trigger personal jurisdiction. But *Burnham* is inapposite for two reasons. First, it concerned "tag" or "transient jurisdiction," whereby personal jurisdiction is established by serving process on a nonresident defendant while it is physically present in the forum state. *Id.* at 610. The Court never addressed whether personal jurisdiction might exist over an *absent* nonresident that had previously committed a tort in the forum.[8] Second, because the defendant "voluntarily and knowingly" entered the forum, the Court had no occasion to consider whether physical presence alone permits the exercise of jurisdiction.[9]

Invoking *Moncrief Oil*, Carmona yet insists that "[w]hen a nonresident defendant commits a tort within the state . . . [,] that tortious conduct amounts

---

[8] *See Burnham*, 495 U.S. at 621 (plurality opinion) (observing that traditional principles of jurisdiction have treated "physically present defendants" and "absent [defendants] . . . quite differently").

[9] *See id.* at 640 (Brennan, J., concurring) ("[A]s a rule the exercise of personal jurisdiction over a defendant based on his *voluntary* presence in the forum will satisfy the requirements of due process" (emphasis added)).

to sufficient minimum contacts with the state" to allow the assertion of jurisdiction.[10] But nothing in that statement abrogates the constitutional requirement that a defendant deliberately make those contacts. Indeed, we began our analysis in *Moncrief Oil* by pronouncing that a defendant must "purposefully . . . establish[] minimum contacts with the forum state."[11] And one of the corporate defendants had done so.[12]

In sum, a defendant's contacts with a forum and the purposefulness of those contacts are distinct—though often overlapping—inquiries. Although tortious conduct within a forum ensures the existence of contacts, *see Moncrief Oil*, 481 F.3d at 314, it does not always guarantee that such contacts were deliberate. Accordingly, LSM is subject to jurisdiction only if it has purposely directed its activities to the forum state or purposely availed itself of its protections.

2.

LSM purposely availed itself of Texas when its employees voluntarily entered the jurisdiction aboard the vessel. Although LSM had no control over the vessel's course, the ship management agreement contemplated that the

---

[10] *Moncrief Oil*, 481 F.3d at 314 (second alteration in original) (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)).

[11] *See id.* at 311 (cleaned up). The other cases Carmona raises all recite that same test *ad nauseum*. *See Streber v. Hunter*, 221 F.3d 701, 718 (5th Cir. 2000); *Guidry*, 188 F.3d at 625; *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 & n.1 (5th Cir. 1985).

[12] *See Moncrief Oil*, 481 F.3d at 313–14 (noting that the corporation's vice-chairman visited Texas to speak at an energy summit); *see also Streber*, 221 F.3d at 718 (holding that the defendant "'purposefully availed' himself of Texas laws when he gave tax advice that he knew would be received by a Texas client"); *Guidry*, 188 F.3d at 630 (finding that the defendants' "alleged intentional and negligent tortious actions were knowingly initiated and aimed at" residents of the forum state); *D.J. Invs.*, 754 F.2d at 548 (concluding that the defendants "engaged in purposeful activity which was directed at Texas").

ship would travel to locations throughout the world.[13]  Moreover, the contract required the ship's owners "to maintain close communication with" LSM, "shar[ing] relevant information regarding [the] ship's schedule" and "port information."  Notably, LSM received actual notice that the ship would be departing for Texas.  Especially considering that the contract was freely ter-minable with two months' notice, LSM was hardly compelled to travel to Texas against its will.  Rather, it made a deliberate choice to keep its employees aboard a ship bound for Texas.  LSM thus purposely availed itself of the bene-fits and protections of the forum state because it reasonably should have anti-cipated being haled into court for torts committed there.  *See Burger King*, 471 U.S. at 474.

LSM misconstrues *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990), in asserting that there is no purposeful availment where a ship manager does not control the itinerary.  There, the plaintiffs sued both the owner and the manager of a ship to recover damages for cargo lost at sea when the vessel sank in the Pacific Ocean.  Although no tortious conduct occurred in the forum state, the plaintiffs claimed specific jurisdiction because the defendants had allegedly contracted to deliver cargo there, "and their failure to do so . . . [had] given] rise to this cause of action."  *Id.* at 786.

We disagreed.  In light of the "uncontroverted evidence negating the exis-tence of any such contract," the defendants did not establish minimum contacts.  *Id.*  "[T]he fact that the vessel [had] set sail for a Louisiana port d[id] not imply an agreement by either defendant to deliver cargo there" because the

---

[13] For instance, the contract authorized LSM to incur necessary expenditures to ensure compliance with the "laws . . . of the places where [the vessel] trades."

vessel had "sailed only on orders from its charterers." *Id.* Consequently, "[s]pecific jurisdiction d[id] not lie" where "neither [the owner] nor [the manager had] purposefully directed the cargo to Louisiana." *Id.* at 787.

This case is plainly distinguishable from *Asarco* in that LSM engaged in purportedly tortious conduct while present in the forum state. Unlike the litigants in *Asarco*, the parties do not contest that LSM made forum contacts that gave rise to at least some of Carmona's claims. *Asarco* thus sheds little light on the question whether LSM purposely availed itself of Texas by allowing its agents to enter the forum and allegedly commit a tort therein. Additionally, the fact that LSM did not seek to abrogate its contract despite knowing that the ship was en route to Texas "impl[ies] an agreement . . . to deliver cargo there." *Id.* at 786. Hence, even under *Asarco*, LSM purposely directed its activities at the forum state or purposely availed itself of that state's benefits and protections.

LSM's reliance on *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002),[14] is similarly unavailing. There, the defendant agreed to supply a safe vessel for the transportation of a reactor from Italy to Louisiana. While the reactor was being unloaded in Louisiana, the onboard crane failed, causing the reactor to fall. *Id.* at 377. We found personal jurisdiction because the contract had specified Louisiana as the destination. *Id.* at 379. Considering the defendant "reasonably should have anticipated that its failure to meet its contractual obligations might subject it to suit there," we held that the defendant could "[]not now claim that its contact with Louisiana was merely fortuitous, random, or attenuated." *Id.* We noted the outcome would be different, however, if Louisiana were not the intended destination but

---

[14] *Nuovo Pignone* was abrogated on grounds not relevant here by *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017).

unexpected circumstances such as "bad weather" forced the ship to dock there. *Id.* at 379 n.2. "In that case, [the defendant] could not have reasonably foreseen being haled into a Louisiana court." *Id.*[15]

That by far is not the situation here. The location of the vessel was the product of neither compulsion nor surprise. Instead, with full knowledge of the intended destination, LSM deliberately permitted its employees to enter Texas. It may not now escape liability resulting from its considered commercial decision.

### B.

For specific jurisdiction, Carmona's claims still must stem from LSM's contacts with Texas. *See id.* at 381–82. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 274. Carmona alleges that LSM breached its duty under general maritime law and the LHWCA to (1) stow the pipes properly; (2) minimize cargo hazards; (3) take precautions to protect workers; (4) provide a safe work environment; (5) turn over the vessel in a safe condition for discharging activities; (6) warn of hidden dangers; and (7) intervene.

LSM concedes that most of Carmona's claims result from its conduct in Texas after the ship's arrival there. But it maintains that Carmona adduced no evidence showing that LSM's alleged failure to minimize cargo hazards or to take safety precautions occurred in Texas. Not so: Carmona averred that while the ship was docked in Texas, LSM's crewmember had inspected the pipe bundles but failed to ensure that they were properly stacked for discharge.

---

[15] The defendant at issue, Fagioli, never was physically present in the forum—an important distinction *vis-à-vis* LSM.

No. 18-20248

When viewed in Carmona's favor, such allegations are sufficient to establish that those two claims arise out of LSM's forum contacts.

Nevertheless, LSM presented undisputed evidence that a third party had stowed the pipes aboard the ship while it was outside the United States. Unlike Carmona's other allegations, the claim that the pipes were improperly stowed does not stem from LSM's activities in Texas. Instead, the alleged tortious conduct occurred outside the United States at the hands of a third party. As a result, the district court correctly dismissed, for want of personal jurisdiction, the claim of failure to load the pipes properly.[16]

C.

Finally, we ask whether the exercise of personal jurisdiction accords "with traditional notions of fair play and substantial justice." *Sangha*, 882 F.3d at 101 (cleaned up). Because the district court did not reach that question, we remand for it to decide that prong. *See Seiferth*, 472 F.3d at 276.

The dismissal, for want of personal jurisdiction, of the claim that LSM negligently stowed the pipes is AFFIRMED. Dismissal of the remaining claims is VACATED and REMANDED for proceedings as needed. We express no view on what decisions the district court should make on remand or on what matters it may consider.

---

[16] Carmona suggests that because he has raised only one *type* of claim—i.e., negligence—the court need not analyze specific jurisdiction on a claim-by-claim basis. But it matters not that Carmona's allegations all sound in negligence; the court must separately consider specific jurisdiction for each claim that arises from different forum contacts. *See Seiferth*, 472 F.3d at 274.

12