# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2019

No. 18-11443

Lyle W. Cayce
Clerk

INMAR RX SOLUTIONS, INCORPORATED, doing business as Inmar;
MARK ROETEN,

Plaintiffs - Appellants

v.

DEVOS, LIMITED, doing business as Guaranteed Returns,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-695

Before DAVIS, HO, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Inmar Rx Solutions, Inc. ("Inmar") and Mark Roeten (collectively with Inmar, "Plaintiffs") appeal the district court's dismissal of their complaint against Devos, Ltd., doing business as Guaranteed Returns or GRx, ("GRx") under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the reasons set forth, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11443

I.

Inmar and GRx participate and compete against one another in the reverse pharmaceutical distribution industry.[1] Inmar is a Texas company with its principal place of business in Fort Worth, Texas.  GRx is a New York company with its principal place of business in Hollbrook, New York. Pertinent to this matter, GRx conducts business in Texas, including online, which requires it to maintain a license issued by the Texas Department of State Health Services.  It also employs individuals located in Texas.  GRx does not, however, have any offices in Texas.

The present dispute pertains to the employment of customer service representative Mark Roeten, who, at all times pertinent to this matter, has lived in Louisiana.  Roeten worked for GRx from September 2012 through April 2017 as an account executive, servicing customers in Louisiana, Alabama, Mississippi, and, occasionally, parts of Florida.  At the beginning of his employment with GRx, Roeten signed, among other documents, a "Subcontractor Agreement" and a "Covenant."  These were executed in and are expressly governed by the laws of New York.  Under the terms of the Covenant, Roeten agreed, *inter alia*, to refrain from in any way competing with GRx within the continental United States for at least three years after his employment terminated for any reason.

Roeten resigned from GRx after GRx and two of its executive officers were convicted in the Eastern District of Pennsylvania of various crimes involving fraudulent activity.   In late April 2017, following Roeten's resignation, GRx sent a letter to Roeten in Louisiana reminding him of the restrictive covenants in his contract with GRx.  Around the same time, counsel

---

[1] As businesses in this industry, Inmar and GRx facilitate the return of unused pharmaceutical products for various types of pharmacies.

2

No. 18-11443

for GRx sent a letter to counsel for Inmar in North Carolina advising that GRx's employees regularly execute non-compete agreements; that GRx was aware that Inmar had solicited some of its representatives; and that Inmar should discontinue such activity.

Shortly thereafter, in May 2017, Roeten began working for Inmar. In July 2018, counsel for GRx sent a letter to Inmar's counsel in Dallas, Texas, claiming that Inmar's employment of Roeten violated his non-compete agreement with GRx and demanding that Inmar terminate Roeten's employment within two days to avoid litigation.

In response to the letter from GRx's counsel, Inmar and Roeten filed a lawsuit against GRx in the United States District Court for the Northern District of Texas. In their complaint, Inmar and Roeten jointly asserted a claim for tortious interference with contractual relationship and requested declaratory relief. Roeten also individually asserted a claim for breach of contract. GRx, in turn, filed a motion to dismiss Plaintiffs' complaint under Rules 12(b)(1), 12(b)(2), and/or 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, transfer the case to the Eastern District of New York. The district court granted GRx's motion on the ground that it lacked personal jurisdiction over GRx and dismissed the case pursuant to Rule 12(b)(2).

## II.

## A.

We review a Rule 12(b)(2) dismissal for lack of personal jurisdiction de novo. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). The plaintiff has the burden of establishing jurisdiction and may meet this burden at the Rule 12(b)(2) stage with prima facie evidence. *Id.* In conducting our review, we "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits

and other documentation." *Id.* (alteration in original omitted) (internal quotation marks and citation omitted).

### B.

"[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)). Thus, a federal court may exercise personal jurisdiction over a non-resident defendant if "the forum state's long-arm statute extends to [such] defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Since "the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). To comport with federal due process, a plaintiff in a diversity case must establish that the non-resident defendant "purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state" and that "the exercise of jurisdiction [] does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citations omitted). Certain types of contacts support a court's exercise of specific jurisdiction over a non-resident defendant, while others support exercise of general jurisdiction. *Id.*

Noting that Plaintiffs did not refute GRx's arguments that general jurisdiction was lacking, the district court focused its jurisdictional analysis only on whether it had specific jurisdiction over GRx. On appeal, Plaintiffs similarly do not urge that general jurisdiction exists and challenge only the district court's ruling that it lacks specific jurisdiction over GRx. Accordingly,

our personal jurisdiction inquiry is limited to the issue of whether the district court properly declined to assert specific jurisdiction over GRx.

Whether specific jurisdiction can be properly asserted over a non-resident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotation marks and citation omitted). For the exercise of specific jurisdiction to comply with due process, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017) (alternations in original omitted) (internal quotation marks and citation omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (alteration in original omitted) (internal quotation marks and citation omitted). Such activity or occurrence must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. Consistent with these principles, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (internal quotation marks and citation omitted).

In determining whether due process allows the exercise of specific jurisdiction, we consider the following factors:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

5

No. 18-11443

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Because "specific personal jurisdiction is a claim-specific inquiry," "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth*, 472 F.3d at 274). If the plaintiff demonstrates satisfaction of the first two factors with respect to each of his claims, then the burden shifts to the non-resident defendant "to show that exercising jurisdiction would be unfair or unreasonable." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

C.

Without specifically addressing whether the first factor for specific jurisdiction—minimum contacts by GRx with the State of Texas—was satisfied, the district court concluded that it could not exercise specific jurisdiction over GRx because Plaintiffs had not established a sufficient nexus between their claims and GRx's Texas-related conduct and, therefore, had not satisfied the second factor. Given this conclusion, the district court also declined to address the third factor for specific jurisdiction—whether the exercise of personal jurisdiction over GRx would be fair and reasonable. Applying the well-settled principles set forth above, we agree with the district court's conclusion that Roeten's breach-of-contract claim does not arise out of or result from GRx's Texas-related contacts[2] and that, for this reason, the

---

[2] On appeal, Plaintiffs note the lack of detailed guidance in jurisprudence from the Supreme Court or this court as to how substantial the nexus must be between a plaintiff's cause of action and a non-resident defendant's forum contacts for the cause of action to "arise out of or relate to" such contacts. They contend that in the absence of such guidance we should formally adopt the "but-for" test announced by the Ninth Circuit in *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990). We conclude that the established precepts

district court lacks jurisdiction over GRx as to such claim. We also agree that the district court lacks jurisdiction over GRx as to Plaintiffs' claims for tortious interference and declaratory judgment but, as discussed below, clarify that, to the extent such claims are derived from GRx's demand letter to Inmar in Texas, the absence of specific jurisdiction results from insufficient minimum contacts between GRx and Texas, as opposed to an inadequate nexus between Plaintiffs' claims and its Texas-related contacts. We address each of Plaintiffs' claims in turn.

1.

As noted by the district court, Roeten's breach-of-contract claim is based on allegations that GRx acted fraudulently in promising to pay Roeten commissions while knowing it was engaged in a scheme to divert portions of commissions due to its sales executives; that GRx violated express terms of Roeten's employment agreement requiring it to provide him with information pertinent to his job by failing to inform him of its fraudulent scheme and the crimes it and its executives committed; and that GRx breached the implied covenant of good faith and fair dealing by committing criminal and fraudulent actions and lying to Roeten. There is no indication that any of this conduct occurred in or was directed towards Texas.[3] Nor is there any allegation that Roeten worked in or was in any way affected by GRx's alleged breach of contract in Texas. Rather, the evidence submitted indicates that Roeten's employment contract with GRx was executed in and is governed by New York law and that Roeten performed work for GRx only in Louisiana, Mississippi,

---

laid out by the Supreme Court and this court and set forth herein are sufficient for our analysis and decline Plaintiffs' invitation.

[3] Though Plaintiffs have vaguely asserted that Roeten was "hired" by and initially reported to a GRx employee—Chris Ottig—who was based in New Braunfels, Texas, there is no indication that any activity of Ottig is related to the breach of contract that Roeten now alleges or the underlying fraud that Roeten asserts supports his breach-of-contract claim.

Alabama, and Florida.  While it is unclear where the alleged fraudulent and criminal activities of GRx and its corporate officers occurred, there is no allegation or evidence submitted suggesting that such activities occurred in Texas.  Thus, Roeten's breach-of-contract claim does not "arise[] out of or result[] from" any activity or occurrence involving Texas.  *See Carmona*, 924 F.3d at 193 (quoting *Seiferth*, 472 F.3d at 271); *see also Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781–82 (noting the significance in a specific jurisdiction analysis of where the conduct giving rise to the claims occurred).  Accordingly, the district court properly declined to exercise jurisdiction over GRx with respect to such claim.

2.

Plaintiffs' tortious interference claim is based on the allegation that GRx has willfully and intentionally interfered in and hindered the performance of the valid contractual relationship between Inmar and Roeten by demanding that Inmar terminate Roeten, and threatening litigation in the event Inmar fails to do so.  Unlike Roeten's breach-of-contract claim, this claim does, on its face, arise from contact by GRx with Texas—namely, the demand letter that GRx's counsel sent to counsel for Inmar in Texas.  The question remains, however, whether the first factor for specific jurisdiction is satisfied with respect to Plaintiffs' tortious interference claim—that is, whether GRx's demand letter qualifies as "minimum contacts" with Texas sufficient to convey jurisdiction over GRx.  *Carmona*, 924 F.3d at 193; *see also Walden*, 571 U.S. at 286 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.")  Under this court's jurisprudence, it is not.

Recently, in *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, we noted the general tendency of courts to conclude that the mere sending

of a cease-and-desist letter threatening litigation to a potential defendant does not provide the minimum contact necessary to confer jurisdiction.  921 F.3d at 542.  Further, we held that, in the context of that case, an indemnification demand letter of an insurance company to a company in Texas, even if it threatened litigation, was insufficient to establish minimum contacts with Texas.  *Id.* at 529, 542.

Similarly, in *Stroman Realty, Inc. v. Wercinski*, we declined to find minimum contacts sufficient for a federal district court in Texas to exercise specific jurisdiction over the commissioner of the Arizona Department of Real Estate based on a cease-and-desist order and follow-up letter sent by the commissioner to a Texas company engaged in advertising and brokering timeshare sales nationwide.  513 F.3d 476, 480–81, 484 (5th Cir. 2008).  We noted that while the commissioner had "reached out" to Texas, her communications directed toward Texas, which cited violations of Arizona law, asserted authority over Arizona-related business activities.  *Id.* at 484.  The commissioner, we recognized, had not "purposefully directed her conduct at Texas"—rather, she was "asserting nationwide authority over any real estate transactions involving Arizona residents or property."  *Id.* at 485–86.  Accordingly, she had not "expressly aim[ed] her actions at Texas."  *Id.* at 486 (internal quotation marks and citation omitted).

Here, as in the cases discussed above, GRx did not "purposely avail[] [it]self of the benefits and protections of [Texas]" by sending a letter to Inmar's counsel in Texas demanding that it terminate Roeten's employment.  *See Halliburton Energy Servs., Inc.*, 921 F.3d at 539 (internal quotation marks and citation omitted).  While GRx was engaged in commercial activity in the forum, unlike the non-resident defendant in *Stroman Realty, Inc.*, GRx's letter, like the correspondence in *Stroman Realty, Inc.*, was the result of a non-resident defendant attempting to demand compliance with a restriction that would

have applied no matter where the plaintiff was located across the country. *See* 513 F.3d at 480–81. Further, the activity that GRx attempted to regulate by its letter was employment activity of Roeten occurring *outside of* Texas, since Roeten—a Louisiana resident—performed his job duties for Inmar only in Louisiana, Mississippi, Alabama and Florida. In light of the foregoing, with respect to Plaintiffs' tortious interference claim, we conclude that GRx could not reasonably have anticipated being haled into court in Texas as a result of its relevant Texas-related contacts and, therefore, did not create minimum contacts with Texas sufficient to allow for the exercise of specific jurisdiction over it as to such claim. *See Halliburton Energy Servs., Inc.*, 921 F.3d at 539; *see also Walden*, 571 U.S. at 285 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") Accordingly, although we somewhat disagree with the reasoning of the district court, its conclusion that it lacked specific jurisdiction over GRx with respect to Plaintiffs' tortious interference claim was not in error.

3.

With respect to Plaintiffs' request for declaratory relief, they assert that, in light of GRx's demand letter to Inmar, justiciable controversies exist between GRx and Roeten regarding the enforceability of the non-compete provisions in Roeten's Covenant with GRx and between GRx and Inmar regarding any liability Inmar may have for employing Roeten despite such provisions. Consequently, they seek a declaratory judgment that any restrictive covenants agreed to by Roeten in his employment contract with GRx are unenforceable and that Inmar cannot be held liable for employing Roeten. These requests are dependent upon interpretation of Roeten's contract with GRx and the merits of his breach-of-contract claim, and also stem from the demand letter sent by GRx to Inmar. For the reasons discussed above, Roeten's

No. 18-11443

breach-of-contract claim does not arise out of or relate to contacts by GRx with Texas, and GRx's demand letter to Inmar did not form sufficient minimum contacts with Texas for the exercise of specific jurisdiction. Therefore, we conclude that the district court's abstention from exercising jurisdiction over Plaintiffs' declaratory judgment claim was also appropriate. *See Carmona*, 924 F.3d at 193.

## III.

For the reasons set forth above, we hold that the district court lacks jurisdiction over GRx with respect to the claims asserted by Plaintiffs in this matter and, therefore, AFFIRM the district court's dismissal of such claims pursuant to Federal Rule of Civil Procedure 12(b)(2).