# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2025

Lyle W. Cayce
Clerk

No. 24-50626

CDC Real Estate Corporation,

*Plaintiff—Appellant*,

*versus*

La Biela, L.L.C.; Jeff Oberg Insurance Trust; Jeff Oberg Children's Trust; Jeff Oberg,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:24-CV-220

Before Wiener, Willett, and Ho, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:[*]

Plaintiff-Appellant CDC Real Estate Corporation (CDC) appeals the district court's dismissal of its lawsuit against Defendants-Appellees, La Biela L.L.C, Jeff Oberg, Jeff Oberg Insurance Trust, and Jeff Oberg Children's Trust. For the reasons stated below, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50626

## I.

La Biela L.L.C. (La Biela) was formed in August 2001 as a manager-managed limited-liability company. La Biela has two members, Jeff Oberg and the Trust,[1] and its principal place of business is in Colorado. Jeff Oberg served as La Biela's initial manager until December 2001. CDC was then appointed and served as La Biela's manager for over twenty years. CDC, solely owned and managed by John Callahan, is a Delaware corporation with its principal place of business in Texas. CDC—through Callahan—managed La Biela from Texas.

On September 7, 2023, acting as La Biela's Manager, CDC purchased from Alamito, LLC a 25% interest in Wadsworth & Girton, LLC for $570,000. Upon discovering that transaction, Oberg learned that Alamito was owned by Callahan, and that Callahan executed that transaction via a Sale and Assignment Agreement, in which Callahan signed for both Alamito and La Biela. At that time, Wadsworth & Girton was a Colorado limited-liability company and held an ownership interest in a real property located in Colorado. Oberg objected to the transaction because he considered it to be unauthorized self-dealing by Callahan. Thereafter, CDC resigned as manager of La Biela and Oberg took over the position. However, the parties dispute when CDC resigned.

As a result of the foregoing, CDC filed a declaratory judgment lawsuit in state court to resolve disputes arising from CDC's authority, on La Biela's behalf, to make the September 2023 purchase and other actions CDC took

---

[1] While Jeff Oberg is certainly a member of La Biela, it is unclear whether the second member is either Jeff Oberg Children's Trust or Jeff Oberg Insurance Trust. That distinction is irrelevant for the purposes of this opinion because it is undisputed that both trusts are Colorado residents and citizens. We therefore refer to this second member as "the Trust" for remainder of this opinion.

as manager of La Biela. Defendants-Appellees removed the matter to the United States District Court for the Western District of Texas, and CDC filed an Amended Complaint specifically seeking a declaration that: (1) CDC, as manager of La Biela, was authorized to purchase the 25% membership interest in Wadsworth & Girton; (2) the fair market value of the membership interest was at least $570,000; (3) CDC was La Biela's manager until January 8, 2024; and (4) Oberg was not La Biela's manager on December 29, 2023.

Defendants-Appellees moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the District of Colorado. Without addressing the alternative motion to transfer, the district court granted that motion reasoning that CDC failed to demonstrate that all of the defendants held sufficient minimum contacts with, or that the cause of the underlying action arose from contact with Texas. CDC timely appealed.

## II.

We review *de novo* a district court's determinations on personal jurisdiction. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). "When, as here, the district court did not conduct an evidentiary hearing on defendant's motion to dismiss, the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). In resolving this issue, we must accept the plaintiff's uncontroverted allegations as true and "resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (citation modified).

## III.

On appeal, CDC contends that the district court erred when it dismissed the case for lack of personal jurisdiction.

In federal diversity suits, personal jurisdiction may only be exercised over a non-resident defendant if (1) the forum state's long-arm statute applies and (2) due process is satisfied under the United States Constitution. *See Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Federal due process requires that the plaintiff prove that the non-resident defendant "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state" and that the exercise of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Two types of "minimum contacts" give rise to jurisdiction: general and specific. *See Johnston*, 523 F.3d at 609. General jurisdiction exists when a "defendant's contacts with the forum state are substantial, continuous, and systematic" such that it is essentially "at home" there. *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation and citation omitted). Specific jurisdiction requires the lawsuit to be substantially related to specific acts committed by the defendant within the forum state so that it could reasonably anticipate being litigated against in that state. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) ("Due process first requires that a defendant have sufficient contacts with the forum state such that it should reasonably anticipate being haled into court there.") (internal quotation omitted).

Importantly, these requirements "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of

4

another party." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation modified). To be sure, the plaintiff cannot be "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Instead, "jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 194 (5th Cir. 2019) (internal citation omitted).

> a. None of the Defendants-Appellees are Subject to General Jurisdiction.

The same test is used to determine whether a limited-liability company is subject to general jurisdiction as the one applicable to corporations. *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336–38 (5th Cir. 2020). CDC contends that the district court had general jurisdiction over La Biela because CDC managed La Biela from Texas for more than twenty years. However, La Biela is both incorporated in Colorado and has its principal place of business there. Moreover, every assertion that CDC raises in support of this claim points strictly to acts that CDC made as La Biela's manager rather than demonstrating how La Biela *deliberately* made contact with the forum. *See Carmona*, 924 F.3d at 195. Because binding precedent holds that CDC cannot be "the only link between the defendant and the forum," this contention fails to establish general jurisdiction. *Walden*, 571 U.S. at 285.

CDC additionally avers that the facts of the present matter are analogous to *Perkins v. Benguet Consolidated Mining Co.*, in which the Supreme Court—under similar circumstances—found general jurisdiction. 342 U.S. 437, 448–49 (1952). In *Perkins*, the plaintiff filed a lawsuit against a Filipino company. *Id.* at 447. However, the company's operations in the Philippines were halted because of Japan's occupation of that country. *Id.* at 447–48. The company president and general manager then moved to Ohio

and began conducting the company's business from there. *Id.* This included, amongst other operations, maintaining an office and two bank accounts, keeping files, distributing salary checks, trading stock, holding directors' meetings—all from Ohio. *Id.* The Court ruled that those operations were sufficient for Ohio to exercise general jurisdiction over the company. *Id.* at 448.

Even though CDC similarly conducted much of La Biela's business in Texas,[2] there is one glaring fact that renders the cases distinguishable. Here, the plaintiff, CDC, is the manager that conducted La Biela's operations in Texas, whereas, in *Perkins*, it was the manager of the *defendant* company which moved the company's operations to the forum state. This difference is crucial since our caselaw holds that it is the *defendant*—not the plaintiff—who must enter the state and invoke the protection of its laws. *Carmona*, 924 F.3d at 195.

In a similar vein, CDC points to no evidence which supports that Oberg or the Trust established "substantial, continuous, and systematic" contacts with Texas. *Johnston*, 523 F.3d at 609. We therefore hold that there is not any general jurisdiction over these defendants.

> b. There is no specific jurisdiction over La Biela.

CDC next contends that specific jurisdiction can be exercised over La Biela. Specific jurisdiction over a defendant corporation exists when (1) it purposefully avails itself of the privilege of conducting business in the forum state; (2) the plaintiff's claims arise out of or relate to the defendant's minimum contacts; and (3) maintaining the suit in the forum state would not

---

[2] From Texas and as manager of La Biela, CDC maintained an office, kept assets and business records, employed Texas residents, maintained a bank account, managed bookkeeping and tax filings, and executed contracts.

offend traditional notions of fair play and substantial justice. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 900 (5th Cir. 2024). If the plaintiff establishes the first two elements, the burden shifts to the defendant to prove that maintaining the suit in that forum would offend traditional notions of fair play and substantial justice. *E. Concrete Materials, Inc.*, 948 F.3d at 296.

CDC fails to establish its burden on the first two elements.

"A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). It follows that the contractual appointment of CDC as La Biela's manager does not automatically subject La Biela to specific jurisdiction in Texas. CDC contends that La Biela established minimum contacts with Texas by (1) entering into a contract authorizing CDC to act as its Manager; (2) knowing CDC is based in Texas and that it conducted business for La Biela from Texas; and (3) understanding CDC was depositing La Biela's funds into a Texas-based bank account that CDC opened. It is undisputed, however, that (1) La Biela's business activities largely involved intangible investments located in Wisconsin, (2) La Biela held no investment assets in Texas, and (3) the underlying transaction giving rise to this declaratory suit is about a Colorado-based property and company. The parties also do not contest that La Biela is a Colorado company or that the Operating Agreement of La Biela provides a Colorado choice-of-law clause.

We have consistently held that "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* at 312. Even assuming CDC performed its managerial obligations for La Biela

in Texas, that alone is not sufficient to establish "minimum contacts" because nothing in the Consent between La Biela and CDC required CDC's performance in Texas and the contract is not centered on Texas.

CDC briefly cites *Central Freight Lines Inc. v. APA Transportation Corp.*, to suggest that minimum contacts exist "where the defendant's very acts had the effect of causing business activity. . . in the forum state." In *Central Freight*, however, we noted that "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." 322 F.3d at 382 n.6. In *Moncrief Oil International Inc. v. OAO Gazprom*, we acknowledged the *Central Freight* holding and stressed that a finding of specific jurisdiction requires not only "foreseeability, but also . . . that the forum state was 'clearly the hub of the parties' activities.'" 481 F.3d at 312 (internal citation omitted). It follows that La Biela certainly could have foreseen that CDC might perform many of its duties in Texas, but—given that La Biela business activities largely involved investments outside of the state—no investment assets were held in Texas. Moreover, since La Biela itself is a Colorado company, it cannot be said that Texas was "clearly the hub of the parties' activities." *Id.*

*Central Freight* is further distinguishable from this case because the defendant there contemplated Texas as a strategically advantageous location for its business activities. 322 F.3d at 382. In that case, the Texas-based plaintiff and the New Jersey-based defendant entered into a standing agreement "under which each [company] could use the services of the other in the other company's primary region of operation." *Id.* at 379. In their doing so, we found that the defendant purposefully availed itself to Texas by entering into the agreement because it "provided [the plaintiff] with pricing and shipping information, and agreeing to accept shipments by [the plaintiff] from Texas for Texas customers." *Id.* at 382. Here, in contrast, CDC agreed

to manage La Biela without any discussion on where it would manage the LLC, as the contract's location was silent. Considering the nature of the work, there is no clear indication that the location of CDC's performance mattered, so it is thus not clear how CDC's managerial performance would "cause business activity" in Texas. *Id.* at 382 n.6. Accordingly, although it might have been foreseeable that CDC would manage La Biela from Texas, its management in Texas was not purposeful. *See Moncrief Oil*, 481 F.3d at 313 ("Mere foreseeability, standing alone, does not create jurisdiction.").

Lastly, we briefly comment on the Colorado choice-of-law clause in the Operating Agreement. In *Central Freight*, we noted the presence of a choice-of-law clause in an agreement could have put a defendant on notice that it might be subject to litigation in a certain forum but that a lack of such provision does not put a defendant on notice that it would not be "haled into court" in the forum state. 322 F.3d at 383 ("Although the Agreement apparently does not contain a forum selection clause, a choice of law clause, or some other provision that could have put the defendant on specific notice that it might be amenable to suit in Texas, neither does the Agreement contain any provision that would give the defendant to reason to think that it would *not* be haled into court in Texas.") (citation modified) (emphasis in original).

The choice-of-law clause in the Operating Agreement suggests that La Biela meant for its dealings and management to be governed by Colorado law. *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (noting that choice-of-law provisions and forum-selection clauses "indicate rather forcefully" that the defendant "did not purposefully direct its activities towards Texas"). In sum, CDC's location in Texas was incidental to its management of La Biela, not intentional. *See Moncrief Oil*, 481 F.3d at 313 ("[W]here mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not

enough to confer jurisdiction."); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that specific jurisdiction could not be exercised over the defendant in Texas because "[a]lthough the contractual relationship between [the plaintiff] and [the defendant] may have been cemented in Texas, the significance of this fact is diminished by the contract provision specifying that Oklahoma law would govern the agreement").

We conclude that no minimum contacts exist to exercise specific jurisdiction over La Biela. Accordingly, we need not discuss whether such jurisdiction would offend traditional notions of fair play and substantial justice. *Moncrief Oil*, 481 F.3d at 314–15.

> c. There is no specific jurisdiction over Oberg or the Trust.

Finally, CDC contends that, under agency law, specific jurisdiction can be exercised over Oberg and the Trust for the same reasons that it raised for La Biela. Since we have already stated that those bases confer no specific jurisdiction over La Biela, it follows that CDC's claim here also fails and there is no specific jurisdiction over either Oberg or the Trust.

## IV.

For the reasons stated above, we AFFIRM.